IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG

BRIAN KNIGHT,

    Plaintiff,

v.                                       Civil Action No. 1:20-CV-254
                                       (JUDGE KLEEH)

CANDICE MCLAUGHLIN,

    Defendant.

**REPORT AND RECOMMENDATION
CONCERNING DAMAGES AND OTHER RELIEF**

This matter is before the undersigned Magistrate Judge pursuant to referral orders [ECF Nos. 5, 27] entered by Honorable United States District Judge Thomas S. Kleeh on December 3, 2020 and August 9, 2021, respectively. Pending before the Court is the issue of determining Plaintiff's damages and/or other appropriate remedy.

**I. PLAINTIFF'S FACTUAL ALLEGATIONS**

Plaintiff, a resident of Morgantown, Monongalia County, in the Northern District of West Virginia, brought a claim for defamation. As Defendant is a Florida resident, Plaintiff pled that jurisdiction is proper in this Court on the basis of diversity of citizenship.

Plaintiff asserted the following factual allegations in his Complaint. [ECF No. 1]. Plaintiff and Defendant are part of a community associated with the "Pennsic War," which itself is affiliated with the Society for Creative Anachronism. In this realm of the Pennsic War, the parties herein identify as "Scadian." Essentially, the parties participate in medieval-style, living history camping events, and in so doing develop community relationships that exist both during these events and in their everyday lives otherwise. The parties previously had been in a romantic relationship.

1

Defendant was part of a Facebook group comprised of more than 360 female members of the Scadian community. Defendant has a daughter. On June 30, 2020, Defendant posted a message to the Facebook group asserting that her daughter had been sexually assaulted some years prior at age 12. At the time of Defendant's post, her daughter was approximately age 26. Defendant then posted another message to the Facebook group identifying Plaintiff as the alleged assailant and provided a link to Plaintiff's Facebook profile.

Plaintiff asserted unequivocally that Defendant's statements are false. While Plaintiff acknowledged also having a romantic relationship with Defendant's daughter, he stated that this relationship began later, when Defendant's daughter was age 19. Plaintiff also stated unequivocally that he never sexually assaulted Defendant's daughter at any time. Additionally, Plaintiff stated that he had no physical sexual contact with this person prior to her being age 19.

Neither Defendant nor her daughter reported these allegations to law enforcement prior to Defendant's statements made to the Facebook group. In response to Plaintiff's threat to bring a defamation claim against Defendant, Defendant made a report to law enforcement. Plaintiff did not believe that Defendant's daughter aided reporting the allegations to law enforcement. Ultimately, the report to law enforcement has not resulted in any police action against Plaintiff.

Defendant's statements to the Facebook group were intended to malign Plaintiff to the parties' community, and bring shame and disgrace upon Plaintiff. Defendant's statement to the Facebook group then were shared outside of that group, and resulted in numerous hostile comments about Plaintiff within the broader Scadian and Pennsic War community. As a result, Plaintiff suffered mental anguish, insult, indignity, and humiliation.

## II. PROCEDURAL BACKGROUND

Plaintiff filed a Motion for Default on May 19, 2021. [ECF No. 21]. By Order to Show Cause entered on May 20, 2021 [ECF No. 22], the undersigned ordered Defendant to show cause, within fourteen (14) days of her receipt of the Order, why Plaintiff's pending motion should not be granted. Defendant received the Order on May 27, 2021. [ECF No. 23]. Thus, Defendant's deadline to show cause lapsed on June 7, 2021. Defendant filed nothing with the Court to show cause.[1]

The undersigned then issued a Report and Recommendation on June 8, 2021 [ECF No. 24] recommending that Plaintiff's Motion for Default [ECF No. 21] be granted. In the Report and Recommendation, the undersigned explained that Defendant was given every opportunity to appear and defend against the claim lodged against her. In fact, Defendant has been provided an extended deadline to file a responsive pleading [ECF No. 16 at 3], and had been informed in writing that failure to file a responsive pleading will result in this recommendation that a default may be entered against her, which ultimately may result in a finding of damages. [ECF No. 22 at 2]. As noted in the Report and Recommendation, the undersigned also verbally informed Defendant of these serious consequences at the above-noted Status Conference. Nonetheless, Defendant was not participatory as to this important aspect of this case.

By Order dated August 9, 2021 [ECF No. 27], Judge Kleeh adopted the undersigned's Report and Recommendation of June 8, 2021. By this Order, Judge Kleeh noted that there had been no objections to the Report and Recommendation, and then adopted the Report and

---

[1] As noted in the Order to Show Cause [ECF No. 22], the undersigned had conducted a Scheduling Conference on May 7, 2021 [ECF No. 18] at which Defendant appeared. At the Status Conference, the undersigned reviewed with Defendant the deadline to file a responsive pleading, and the importance of the deadline and the consequences which may result for failure to file a responsive pleading. On the record, Defendant stated that she understood all of this.

Recommendation. Judge Kleeh also directed the undersigned to address the issue of determination of damages, including conducting a hearing if necessary, pursuant to Rule 55(b)(2)(B) of the Federal Rules of Civil Procedure.

Pursuant to Judge Kleeh's Order of August 9, 2021, the undersigned entered an Order on August 11, 2021 [ECF No. 28] scheduling a hearing to determine damages. The undersigned's Order directed Plaintiff to file a memorandum of law as to the proper assessment and measure of damages for a defamation claim in this context. That Order also gave a deadline for Defendant to file a written response to Plaintiff's memorandum. Plaintiff timely filed his memorandum of law on August 31, 2021. [ECF No. 31]. Defendant filed no response.

### III. PLAINTIFF'S PRESENTATION REGARDING DAMAGES

On September 20, 2021, the undersigned convened a hearing on the issue of damages. The proceeding was conducted by Zoom videoconference/teleconference. Plaintiff himself appeared, as well as by and through his counsel, Danielle L. Deitrich. Plaintiff and his counsel appeared from the same location. Also appearing was one witness for Plaintiff, Rebecca Sturnfield, his mother, from a different location. Defendant did not appear.

Plaintiff himself testified first. He explained how tight-knit the Scadian community is, and how from that community, important and life-long friendships often develop among its members. Plaintiff described how the community's principal annual event draws upwards of 12,000 to 20,000 participants. He also explained how extensive the community is, and how it is active during times other than the large annual event. Different regions of the country have their own Scadian sub-groups which fraternize among themselves throughout the year. There is such a group in Plaintiff's locale, with which he associated prior to these events. Plaintiff also set forth how

4

members such as himself invest in the community and its activities by devoting time to its events, traveling for events and meetings, and spending money on attire, gear, and other necessary items.

Plaintiff also provided more detail about the nature of Defendant's statements at issue and their effect on him. Plaintiff told the Court that in posting statements to the Facebook group, Defendant used Plaintiff's full name. Plaintiff's Facebook profile to which Defendant linked in making the statements was set to "public," meaning that it was more widely viewable by the community than if maintained at a more restrictive setting. Plaintiff's Facebook profile contained his photograph. Within hours of Defendant posting her statements, Plaintiff received several communications from community members with concern about Defendant's statements. Plaintiff explained that he immediately felt deep humiliation. He was in fear of losing his job and maintaining a livelihood, particularly because of his employment in food services for a sorority house.

Plaintiff explained how Defendant's statements spread quickly in the Scadian community. As a result, Plaintiff lost multiple friends within the community, although he could not pinpoint an exact number. Some of these friends are people he had known for longer than a decade. At the community's principal annual event, at which participants establish a multitude of camps, Plaintiff is not welcome in certain camps. He has shifted from association with certain camps, seeking inclusion in others. Aside from the annual event, in terms of local get-togethers, he has separated from his local group, latching onto other groups from areas farther away geographically. To illustrate these effects, Plaintiff introduced his Exhibit 1. [ECF No. 34-1]. This is statement posted on Plaintiff's Facebook wall by a mutual friend of Plaintiff and Defendant, decrying Plaintiff as a pedophile, stating that this person cannot be friends with Plaintiff any longer, and wishing

punishment for Plaintiff. Plaintiff told the Court that this was a "public" post, viewable by all of Plaintiff's Facebook friends.

Plaintiff also detailed the physical effects he experienced as a result of Defendant's statements and the broadcast of them. He experienced loss of appetite, stress, lack of focus, weight loss, exhaustion, nightmares, and lack of energy. He also described the detrimental effects on his romantic relationships. In short, he says he experienced mental anguish, a loss of dignity, and humiliation. His standing in the community suffered.

Plaintiff noted that at the time of these events, he was residing with his mother and stepfather. He recounted how he had to inform them about Defendant's statements, and how difficult it was to have those conversations. To this end, Plaintiff called Ms. Sturnfield to testify. Ms. Sturnfield explained to the Court how, in the days after Defendant made the statements, Plaintiff avoided her and his stepfather and otherwise acted strangely and was withdrawn. She stated that Plaintiff finally told them what had happened. She said that over the course of approximately a month, Plaintiff was disheveled and not focused on bathing or dressing properly. He was clearly nervous, angry, and upset, and did not eat much. Ms. Sturnfield stated that Plaintiff feared losing his job and worried greatly about how people would perceive him. She explained that once Plaintiff sought the help of legal counsel, he has improved somewhat.

Plaintiff stated that he has not lost wages or missed work as a result of these developments. And he stated that he has not sought medical, psychiatric, or psychological help, and thus has not incurred expenses related to such services.

## IV. LEGAL AUTHOIRITY

The undersigned finds that Plaintiff's statement of the law as set forth in his memorandum filed on August 31, 2021 is accurate and reliable. [ECF No. 31]. In brief, and as set forth therein,

the harm which Plaintiff details gives rise to a cognizable defamation claim under West Virginia law.[2] A seminal case governing the question is Sprouse v. Clay Commc'n, Inc., 158 W. Va. 427, 454, 211 S.E.2d 674 (1975). As set forth in Sprouse, a claimant may recover actual and compensatory damages for defamation. Id. at 692-693. The Sprouse court recognized that a claimant's actual losses for defamation can be more difficult to ascertain than losses from other types of torts resulting in lost wages or medical costs. Id.

Nonetheless, the court there further recognized that actual and compensatory damages in the defamation context may arise from damage to a claimant's reputation and community standing, as well as from "mental anguish, insult, indignity, and humiliation." Id. See also Colcord v. Gazette Pub. Co., 106 W. Va. 419, 145 S.E. 751, 753 (1928) ("Any printed or written publication imputing to another a crime or moral delinquency is actionable per se, without proof of special damages"); Hupp v. Sasser, 200 W. Va. 791, 796, 490 S.E.2d 880, 885 (1997) ("A statement may be described as defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him") (citation and internal quotation omitted).

Thus, to recover for defamation, Plaintiff need not show special damages (actual monetary loss). He may recover based upon general damages alone.

### V. RECOMMENDATION AND CONCLUSION

Accordingly, based on the foregoing, the undersigned **RECOMMENDS** that the Court enter an order of default judgment, granting judgment for Plaintiff against Defendant in the amount of **$80,000.00 in damages, plus post-judgment interest** under 28 U.S.C. § 1961, at the rate of

---

[2] The undersigned does not review law establishing the cause of action for defamation or the elements thereof. These are not in question, as the Court previously granted Plaintiff's motion for default. The purpose of this review instead is to determine the appropriate remedy in light of default previously entered as to Plaintiff's claim.

interest established thereby, from the date of the Court's judgment order until the date judgment is paid. Further, the undersigned **RECOMMENDS** that in said order, the Court **ENJOIN** Defendant from further publishing the same or similar statements about Plaintiff that are the subject of this matter. To this end, the undersigned **RECOMMENDS** that the Court's order indicate that if Defendant so publishes the same or similar statements about Plaintiff, then Plaintiff may petition the Court to request appropriate further relief for any additional action which may be in violation of the Court's order.

Any party have fourteen (14) days (filing of objections) and then three days (mailing/service) from the date of the filing of this Report and Recommendation to file with the Clerk of the Court **specific written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.** A copy of such objections should also be submitted to the Honorable Thomas Kleeh, United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12.

**Failure to timely file written objections to the Report and Recommendation as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Court directs the Clerk of the Court to provide a copy of this Order to any parties who appear *pro se* and all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

**DATED**: September 24, 2021.

MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE